| | |
|---|---|
| FREUD AMERICA, INC.,<br><br>          Plaintiff,<br><br>v.<br><br>MILWAUKEE ELECTRIC TOOL CORPORATION,<br><br>          Defendant. | Civil Action No. 20-cv-109 |

# COMPLAINT

Plaintiff Freud America, Inc. ("Freud") hereby files this Complaint against Defendant Milwaukee Electric Tool Corporation ("Milwaukee") based on the following allegations:

## PRELIMINARY STATEMENT

1. This is a case about the validity of Freud's incontestable trademark registration for the color red "as applied to the entire surface of the goods except the cutting edge and annular hub or shaft" for "cutting tools for power woodworking machines, namely . . . saw blades . . ." (Registration No. 2464769) ("'769 Registration" and "Red Mark").[1]

---

[1] The entire identification of goods for the '769 Registration is "cutting tools for power woodworking machines, namely, shaper cutters, saw blades, router bits and forestner bits."  However, Milwaukee did not petition to cancel the '769 Registration with respect to shaper cutters, router bits, or forestner bits, so that portion of the '769 Registration is not at issue here.

2. Freud is an industry leader in cutting tool accessories and is one of the key players in the market for high-end circular saw blades used by contractors and sophisticated woodworkers.

3. Since 1996, Freud has extensively advertised and sold cutting tool accessories, including circular saw blades, bearing the Red Mark. In particular, from 2001 (the first year for which Freud has complete sales information) to July 2016, Freud sold over 48 million red circular saw blades for total sales of over $670 million. From 1997 to 2016, Freud spent over $10 million advertising and promoting its cutting tool accessories, including its red circular saw blades bearing the Red Mark.

4. Freud filed the application underlying the '769 Registration on August 6, 1996.

5. The Patent and Trademark Office ("PTO") issued the '769 Registration on July 3, 2001, and it became incontestable under Section 15 of the Lanham Act, 15 U.S.C. § 1065, on April 10, 2007.

6. The PTO's decision to register the Red Mark remained undisturbed for over 13 years, until Milwaukee filed a petition to cancel the '769 Registration with the Trademark Trial and Appeal Board ("Board") on July 18, 2014, arguing that Freud's well-known Red Mark is generic with respect to saw blades because it is "so common in the industry that it cannot identify a particular source of [goods] and cannot distinguish [Freud's goods] from the goods of others."

7.      Freud filed a motion to amend the identification of goods in the '769 Registration under Section 18 of the Lanham Act, 15 U.S.C. § 1068, solely in the event that the Board deemed such amendment necessary to dismiss the cancellation.  Freud requested that "saw blades" be amended to "saw blades **excluding reciprocating saw blades and jigsaw blades**" (emphasis added), so that the '769 Registration would cover products such as circular saw blades used for power woodworking machines, but expressly exclude reciprocating saw blades and jigsaw blades ("Section 18 Amendment").  A copy of the motion for the Section 18 Amendment is attached hereto as Exhibit A ("Motion"), the contents of which are incorporated herein.

8.      During the cancellation proceeding, Freud introduced substantial evidence of the ever-increasing sales and advertising of its red cutting tool accessories from 1997 to 2016, including: advertisements that encouraged consumers to look for red when they sought to purchase Freud's products; well-known third-party publications featuring Freud's Red Mark, such as *Popular Mechanics* and *Woodworker's Journal*; the myriad colors Freud's major competitors use on their saw blades.

9.      Milwaukee responded to Freud's wealth of evidence with a sea of red herrings, including irrelevant red products (e.g., hole saws, which are used to drill, like drills and drill presses do, rather than to cut, like saw blades do; hacksaw blades, which are hand tools that cannot be used with power woodworking machines; and blades used to cut materials other than wood, such as concrete); blades that were not actually red; website print-outs that failed to prove any third-party red blades were ever sold or the

-3-

extent to which consumers may have been exposed to them; Milwaukee's trademark registrations for the word marks RED LITHIUM and THE RED ZONE, which are not used in connection with red saw blades; and third-party trademark registrations for design marks that include partial images of red saw blades, but which are not used in connection with the sale of red blades.

10. Milwaukee also relied heavily on inadmissible hearsay documents, such as print-outs from the Wayback Machine (archive.org) that Milwaukee used to try to prove how websites appeared on certain dates in the past, and communications from recipients of Freud's demand letters who did not testify at trial.

11. Milwaukee did not adduce evidence that **any** of Freud's major competitors sells red saw blades in the U.S., with the exception of a *de minimis* number of red Milwaukee jigsaw blades.

12. Despite the evidence heavily favoring Freud, the Board granted the petition to partially cancel the '769 Registration on the ground of genericness and denied Freud's Motion for the Section 18 Amendment.

13. The Board's decision is legally and factually erroneous in many respects. Freud hereby petitions this Court for a *de novo* review of the record and reversal of the Board's decision to partially cancel the '769 Registration.

## **PARTIES**

14. Plaintiff, Freud America, Inc., is a North Carolina corporation headquartered at 218 Feld Avenue, High Point, North Carolina.

15. Defendant, Milwaukee Electric Tool Corporation, is a Delaware corporation headquartered at 13135 West Lisbon Road, Brookfield, Wisconsin.

**JURISDICTION AND VENUE**

16. This Court has subject matter jurisdiction over this matter pursuant to 15 U.S.C. § 1071(b), because Freud is challenging a final decision of the Trademark Trial and Appeal Board by filing a civil action; pursuant to 28 U.S.C. § 1331, because this action arises under the federal Lanham Act; and pursuant to 15 U.S.C. § 1119, because Freud asks this Court to reverse the Board's order canceling the '769 Registration.

17. This Court has personal jurisdiction over Milwaukee pursuant to N.C. Gen. Stat. § 1-75.4. On information and belief, Milwaukee regularly has solicited business in the State of North Carolina and in this District, has transacted and done business in North Carolina and in this District, and derives substantial revenue from interstate commerce, including commerce in North Carolina and in this District. In particular, on information and belief, Milwaukee regularly promotes and advertises its power tools and power tool accessories in North Carolina and has sold its power tools and power tool accessories within North Carolina and this District. Milwaukee applied for a Certificate of Authority to transact business in the state of North Carolina as recently as October 11, 2019. Moreover, Milwaukee's petition to cancel the '769 Registration was directed at Freud's property located in this District, as Freud maintains its offices and headquarters here.

18. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b), because Milwaukee is subject to personal jurisdiction in this District and a substantial part of the

events giving rise to Freud's claims occurred in this District. In particular, on information and belief, Milwaukee regularly promotes and sells its power tools and power tool accessories in this District. Moreover, this case involves ownership of Freud's '769 Registration, and given that Freud's offices and headquarters are located in this District, a substantial part of the property that is the subject of this suit is located in this District.

## FACTS

### I. FREUD'S WELL-KNOWN RED MARK

**A. Freud has sold over $670 million in red circular saw blades from 2001 to July 2016, and its sales continue to increase.**

19. From 2001 (the first year for which complete sales figures are available) through the close of discovery in the cancellation proceeding in July 2016, Freud sold over 48 million circular saw blades bearing the Red Mark, for total sales of over $670 million.

20. Since 2016, Freud's sales of circular saw blades bearing the Red Mark have significantly increased on an annual basis.

**B. Consumers associate the Red Mark with Freud's circular saw blades as a result of Freud's extensive advertising and promotion.**

21. Freud has engaged in extensive advertising and promotion of its red cutting tool accessories, including its red circular saw blades, for decades, including through print advertisements in magazines, trade publications, and other periodicals; sell sheets distributed to its dealers; its own and third-party catalogs; trade shows; in-store displays;

and product demonstrations. Indeed, from 1997 to July 2016, Freud spent over $10 million advertising and promoting its products bearing the Red Mark.

22. Many of Freud's advertising and marketing pieces are designed to directly associate the Red Mark with Freud in consumers' minds. For example, Freud's "Spice Up Your Saw – Red Hot Sauce" campaign included sell sheets, stickers, and promotional hot sauce bottles picturing Freud's red circular saw blades. Other campaigns featuring Freud's Red Mark included the taglines "Well Red," "Make it Red," and "Radical. Rugged. Red."

23. Most of Freud's advertising and marketing materials include explicit trademark claims, such as, "Red is a registered trademark of Freud USA Inc." or "Red saw blades are a registered trademark of Freud America, Inc." Freud has included these types of claims in its advertising and marketing materials since as early as 1996.

24. Third-party publications that target members of the woodworking or construction industries, such as *Popular Mechanics*, *Workbench*, *Woodworker's Journal*, *Wood*, *American Woodworker*, *Woodcraft*, *ShopNotes*, *Fine Woodworking*, *Tools of the Trade*, and *Pro Tool Reviews*, frequently include unsolicited references to Freud's saw blades bearing the Red Mark.

25. Freud maintains an active social media presence, having created Facebook accounts for its Freud and Diablo brands in 2010, and Instagram accounts for both brands in 2012. Freud uses these accounts to post photos and videos of its products in action, run sweepstakes, re-post content from third-party accounts that highlight Freud's

products, and interact with its customers. Freud—and third parties, including Freud's customers—often use #redtools, "Red Tools," or similar language when referring to Freud or its products on social media, which further demonstrates consumer awareness that the Red Mark is a brand associated with Freud and its products.

26. Additionally, Freud began creating and posting videos to YouTube in or around 2010, the majority of which demonstrate how to use Freud's red saw blades. Currently, these videos have received more than 182,000 views combined. Consumers, The Home Depot, and other users also post videos on YouTube that feature Freud's red saw blades.

### C. Freud is the only major player in the saw blade industry that sells predominantly red saw blades.

27. None of Freud's major competitors in the saw blade industry have sold red circular saw blades since Freud adopted the color for its circular saw blades in 1996.

28. Freud's major competitors and others in the saw blade industry sell saw blades in numerous colors other than red, such as white, blue, orange, yellow, black, gray, gold, green, and a natural metal color.

29. Milwaukee claims that its own sale of red reciprocating and jigsaw blades weakens Freud's rights in the Red Mark for "saw blades excluding reciprocating saw blades and jigsaw blades," but Milwaukee stopped selling red reciprocating saw blades over a decade ago, and its sale of four SKUs of red jigsaw blades are *de minimis*.

## II. HISTORY OF THE '769 REGISTRATION

30. Freud used the Red Mark in connection with cutting tool accessories at least as early as February 28, 1988, and in connection with saw blades at least as early as July 31, 1996.

31. Freud filed the application that matured into the '769 Registration (Serial No. 75150972, "Application") on August 6, 1996.

32. The Application published for opposition on April 10, 2001. Neither Milwaukee, nor any third party, opposed the Application.

33. The Application matured into the '769 Registration on July 3, 2001.

## III. BOARD CANCELLATION PROCEEDING

34. On July 18, 2014, Milwaukee filed a petition to cancel the '769 Registration on the grounds of genericness.[2]

35. On December 2, 2019, the Board issued its final decision, in which it ordered the cancellation of Freud's incontestable '769 Registration on the grounds of genericness. A copy of the Board's decision is attached hereto as Exhibit B ("Decision").

## IV. REPRESENTATIVE ERRORS OF FACT AND LAW MADE BY THE BOARD

---

[2] Milwaukee also petitioned to cancel the '769 Registration on the grounds that it fails to function as a trademark (which the Board found was simply an amplification of the genericness claim), and subsequently amended its petition to add a claim for fraud on the PTO. Neither of these grounds for cancellation is relevant to this appeal. Milwaukee also petitioned to cancel another registration owned by Freud, for the color red as applied to "blades for reciprocating power saws" (Reg. No. 4028314) ("'314 Registration"). The Board consolidated the two cancellation proceedings and ultimately ordered the cancellation of the '314 Registration on the grounds of genericness and lack of acquired distinctiveness. Freud does not appeal the Board's ruling with respect to the '314 Registration.

36. The Board's legal conclusions were erroneous and based on factual findings not supported by substantial evidence. Freud appeals, among others, the following erroneous findings by the Board and requests *de novo* review.

### A. The Board erred by considering evidence of red saw blades that cut materials other than wood.

37. Although the '769 Registration is limited to "cutting tools for power **woodworking** machines" (*emphasis added*), the Board's Decision erroneously states, "Saw blades that cut material besides wood . . . are relevant to [the] analysis." Decision, p. 20.

38. Based on this erroneous finding, the Board improperly considered Milwaukee's evidence of red blades intended to cut materials other than wood, such as segmented diamond rim blades for cutting pavers, soft brick, asphalt and concrete/block; blades for cutting aluminum, plastic, fiberglass, and metal; and diamond blade abrasive wheels.

### B. The Board erred by considering evidence of red hole saws used in drills and drill presses.

39. The '769 Registration is limited to "**cutting** tools for power woodworking machines" (emphasis added). Hole saws are not cutting tools, but rather, drill bits used in connection with power drills and drill presses. A hole saw is inserted into a drill or drill press and spins in the same manner as a drill bit.

40. The United States Customs Court has held that hole saws are not saw blades. In denying a protest regarding the classification of hole saws, the Customs Court

-10-

Case 1:20-cv-00109-WO-JEP   Document 1   Filed 02/03/20   Page 10 of 20

stated, "Exhibits 1 and 2 [hole saws for cutting wood and metal, respectively] are not blades for saws. They are not used in saws but are interchangeable tools used in electric drills, drill presses and flexible shafts. They are cylindrical tools and not blades." *Dollar Trading Corp. v. United States*, 349 F. Supp. 1395, 1400 (Cust. Ct. 1971), *aff'd,* 468 F.2d 631 (C.C.P.A. 1972).

41. Milwaukee's own website and catalogs list hole saws under the "drilling," not "cutting," product category, and refer to the products as "hole saws," not "hole saw blades."

42. In addition to Milwaukee, Freud and many others (such as Lenox, Craftsman, Irwin, Ace Hardware, Menards, DeWalt, The Home Depot, Bosch, Lawson Products, and Ethan Tools) promote hole saws separately from saw blades or characterize hole saws as drill bits or drill accessories.

43. Despite the foregoing evidence, the Board's Decision erroneously states, "the genus 'saw blades for power woodworking machines' must be read to include the species of . . . hole saw blades" and "hole saws are a type of saw blade used with drills which also are power woodworking machines." Decision, pp. 19, 68. Based on these incorrect findings, the Board improperly considered Milwaukee's evidence of dozens of red hole saws.

### C. The Board erred by making unsupported factual findings regarding the alleged size of third-party sellers of red blades.

44. The Board erred by finding, "dozens of manufacturers, **large and small**, have used and continue to use red on a variety of saw blades." *Id.*, p. 66 (emphasis added).

45. There is no direct evidence in the record regarding the size of any saw blade sellers that sell red blades, other than Freud and Milwaukee.

46. Freud objected to Milwaukee's introduction into evidence of website print-outs purporting to show the size, or number of retail locations, of third-party businesses on the grounds of hearsay and lack of foundation, because website print-outs cannot be offered to prove the truth of the matters asserted. The Board, however, appears to have improperly considered this evidence, despite Freud's objections.

### D. The Board erred by considering evidence of trademark registrations for design marks including partial, red-colored circular saw blades.

47. The Board erred by treating registrations for the SCARFMASTER and TUBEMASTER design marks, which include images of partial, red-colored circular saw blades, "relevant" to the proceeding. *Id.*, pp. 66–67. The Board further erred when it found the fact that "one manufacturer has even registered a depiction of a red saw blade as part of its SCARFMASTER and TUBEMASTER trademarks" was part of the evidence that "overwhelmingly demonstrates that the color red on saw blades is so common in the industry that it cannot identify a single source for saw blades for power woodworking machines . . ." *Id.*

-12-

48. The Board should have excluded these registrations because Milwaukee offered no evidence that the owner of the registrations sells any red-colored saw blades. Moreover, third-party registrations do not prove that a third-party mark is actually in use, that consumers are familiar with the mark, or that the mark is likely to have any effect on consumer perception.

### E. The Board erred by giving undue weight to Milwaukee's evidence of the extent to which consumers are exposed to third-party red blades.

49. The Board acknowledges there is limited evidence of actual sales of third-party red blades, but gives undue weight to Milwaukee's purchase of some of the blades, "particularly over the Internet." *Id.*, pp. 67–68. Milwaukee's isolated purchases of saw blades, particularly purchases over the Internet, do not demonstrate the extent to which consumers may have been exposed to these third-party blades.

50. Evidence of third-party catalogs and websites purportedly selling red blades—without any evidence regarding the time during which the blades were available or how many were purchased—is of similarly limited probative value. Website print-outs are of minimal value absent evidence of the extent of consumer exposure to them.

### F. The Board erred in finding the Red Mark generic at the time Freud filed the Application.

51. The Board erred in finding the Red Mark generic for saw blades at the time Freud filed its Application.

52. Freud filed the Application on August 6, 1996.

53. The record includes evidence of **only one third-party red blade** purportedly advertised in 1996. This evidence does not support a finding that the Red Mark was generic for saw blades in 1996.

### G. *The Board erred by giving inadequate consideration to Freud's Motion for Section 18 Amendment.*

54. During the cancellation proceeding, Freud filed a Motion for the Section 18 Amendment, solely in the event that the Board deemed such amendment necessary to dismiss the cancellation. In its Motion, Freud stated:

> [I]f, however, the Board ultimately finds that Freud is not entitled to registration in the absence of a restriction to the identification of goods in the subject registration, then Freud requests, as a Section 18 affirmative defense, the following changes to the identification of goods in Reg. No. 2,464,769 (proposed new language underlined): "cutting tools for power woodworking machines, namely, shaper cutters, saw blades <u>excluding reciprocating saw blades and jigsaw blades</u>, router bits and forestner bits."

Motion, p. 2. Freud also included a request for the Section 18 Amendment (in the alternative) in its trial brief.

55. The Section 18 Amendment proposed by Freud in the proceeding would effectively limit the scope of the '769 Registration to the color red applied to products such as circular saw blades used for power woodworking machines, and would expressly exclude products such as reciprocating saw blades and jigsaw blades.

56. The Board's analysis of Freud's proposed Section 18 Amendment consists of a single paragraph. Decision, pp. 88–89. In cursory fashion, and with insufficient explanation, the Board denied the Motion because the proposed Section 18 Amendment

-14-

did not exclude "non-wood-cutting circular saw blades that can be used on power woodworking machines, sabre saw blades, and hole saws, among others." *Id*.

57. The Board improperly considered third-party red reciprocating saw blades, jigsaw blades and sabre saw blades to support its determination that the '769 Registration, as amended under Section 18, was generic, because such products are outside the scope of the registration.

58. The Board also improperly considered third-party red hole saws and saw blades that cut materials other than wood to support its determination that the '769 Registration, as amended under Section 18 of the Lanham Act, was generic. Hole saws and blades that cut materials other than wood are not relevant to this matter. The Board erred in considering them when ruling on Freud's Motion for a Section 18 Amendment. *See* Sections IV(A)–(B), *supra*.

## CAUSES OF ACTION

### COUNT I
### APPEAL FROM DECISION OF TRADEMARK TRIAL AND APPEAL BOARD PURSUANT TO 15 U.S.C. § 1071(b)

59. Freud re-alleges paragraphs 1–58, as if fully set forth herein.

60. Freud appeals the erroneous December 2, 2019 Decision of the Trademark Trial and Appeal Board in the matter of *Milwaukee Electric Tool Corp. v. Freud America, Inc.*, Cancellation Nos. 92059634 and 92059637.

61. The December 2, 2019 Decision is a final decision subject to review under Section 21 of the Lanham Act, 15 U.S.C. § 1071.

-15-

62. The Board's conclusions of law are incorrect and its findings of fact are not supported by substantial evidence.

63. Freud has not appealed the Board's Decision to the United States Court of Appeals for the Federal Circuit.

64. Freud seeks a *de novo* review of the Board's Decision.

65. Freud seeks a reversal of the Board's order to partially cancel the '769 Registration for "cutting tools for power woodworking machines, namely . . . saw blades" on the grounds of genericness.

66. Freud further seeks an order requiring that the PTO not partially cancel the '769 Registration for "cutting tools for power woodworking machines, namely . . . saw blades" on the grounds of genericness.

67. In the first alternative to the requests made in Paragraphs 65 and 66, Freud seeks an order requiring the PTO to amend the '769 Registration pursuant to Section 18 of the Lanham Act, 15 U.S.C. § 1068, and/or pursuant to this Court's authority under Section 37 of the Lanham Act, 15 U.S.C. § 1119, to "cutting tools for power woodworking machines, namely, shaper cutters, saw blades excluding reciprocating saw blades and jigsaw blades, router bits and forestner bits" and ordering the PTO not to cancel the '769 Registration as amended in this paragraph.

68. In the second alternative to the requests made in Paragraphs 65 and 66, Freud seeks an order requiring the PTO to amend the '769 Registration pursuant to Section 37 of the Lanham Act, 15 U.S.C. § 1119, to "cutting tools for power

woodworking machines, namely, shaper cutters, circular saw blades, router bits and forestner bits" and ordering the PTO not to cancel the '769 Registration as amended in this paragraph.

## COUNT II
### REQUEST FOR DECLARATORY JUDGMENT
### PURSUANT TO 28 U.S.C. §§ 2201 AND 2202

69. Freud re-alleges paragraphs 1–68, as if fully set forth herein.

70. Freud's '769 Registration has been challenged by Milwaukee on the grounds that the Red Mark is generic for "cutting tools for power woodworking machines, namely . . . saw blades . . ."

71. As such, there exists an actual controversy among the parties as to the continued registrability of the Red Mark, with respect to which Freud requests a declaratory judgment pursuant to 28 U.S.C. § 2201.

72. Freud seeks an order declaring that the Red Mark, as used in connection with "cutting tools for power woodworking machines, namely . . . saw blades" is not generic and is registrable as a trademark with the PTO.

73. In the first alternative to the request made in Paragraph 72, Freud seeks an order declaring that the Red Mark, as used in connection with "cutting tools for power woodworking machines, namely . . . saw blades excluding reciprocating saw blades and jigsaw blades" is not generic and is registrable as a trademark with the PTO.

74. In the second alternative to the request made in Paragraph 72, Freud seeks an order declaring that the Red Mark, as used in connection with "cutting tools for power

-17-

woodworking machines, namely . . . circular saw blades" is not generic and is registrable as a trademark with the PTO.

**PRAYER FOR RELIEF**

**WHEREFORE**, Freud asks this Court to enter judgment:

A. Reversing the December 2, 2019 Decision of the Trademark Trial and Appeal Board in the matter of *Milwaukee Electric Tool Corp. v. Freud America, Inc.*, Cancellation Nos. 92059634 and 92059637 with respect to the order partially canceling the '769 Registration for "cutting tools for power woodworking machines, namely . . . saw blades" on the grounds of genericness;

B. Ordering that the Red Mark, as used in connection with "cutting tools for power woodworking machines, namely . . . saw blades" is not generic and is registrable as a trademark with the PTO;

C. Ordering the PTO not to partially cancel the '769 Registration for "cutting tools for power woodworking machines, namely . . . saw blades" on the grounds of genericness;

D. In the first alternative to the relief requested in Paragraphs B and C: (i) ordering that the Red Mark, as used in connection with "cutting tools for power woodworking machines, namely . . . saw blades excluding reciprocating saw blades and jigsaw blades" is not generic and is registrable as a trademark with the PTO, and (ii) ordering the PTO to amend the '769

Registration to "cutting tools for power woodworking machines, namely, shaper cutters, saw blades excluding reciprocating saw blades and jigsaw blades, router bits and forestner bits" and not to partially cancel the '769 Registration as amended in this paragraph;

E. In the second alternative to the relief requested in Paragraphs B and C: (i) ordering that the Red Mark, as used in connection with "cutting tools for power woodworking machines, namely . . . circular saw blades" is not generic and is registrable as a trademark with the PTO, and (ii) ordering the PTO to amend the '769 Registration to "cutting tools for power woodworking machines, namely, shaper cutters, circular saw blades, router bits and forestner bits", and not to partially cancel the '769 Registration as amended in this paragraph; and

F. Awarding Freud such other relief as this Court may deem just and equitable.

Respectfully submitted, this the 3rd day of February, 2020.

/s/ Jodi D. Hildebran
Jodi D. Hildebran
N.C. State Bar No. 38239
*Local Counsel to Plaintiff Freud America, Inc.*
**Allman Spry Davis Leggett
    & Crumpler, P.A.**
380 Knollwood Street, Suite 700
Winston-Salem, NC 27113-5129
Telephone: 336-722-2300
jhildebran@allmanspry.com

*and*

/s/ Thad Chaloemtiarana
Thad Chaloemtiarana
(*special appearance pending*)

/s/ Jessica A. Ekhoff
Jessica A. Ekhoff
(*special appearance pending*)

*Counsel to Plaintiff Freud America, Inc.*
**Pattishall, McAuliffe, Newbury,
  Hilliard & Geraldson LLP**
200 S. Wacker Drive, Suite 2900
Chicago, Illinois 60606
Telephone: 312-554-8000
tc@pattishall.com
jae@pattishall.com

-20-

Case 1:20-cv-00109-WO-JEP   Document 1   Filed 02/03/20   Page 20 of 20